## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## PINE BLUFF DIVISION

LEOTIS DWAYNE GRAYDON                                         PLAINTIFF

v.                              NO. 5:12CV00014 JLH

MICHAEL J. ASTRUE, Commissioner,
Social Security Administration                               DEFENDANT

## OPINION AND ORDER

Leotis Dwayne Graydon has appealed the Social Security Administration Commissioner's final decision to deny his claim for disability insurance benefits and supplemental security income. Both parties have submitted briefs, and the case is ripe for decision. For the following reasons, the Court affirms the Commissioner's decision.

On December 22, 2008, Graydon applied for disability insurance benefits and supplemental security income. Tr. at 122-29.[1] After his applications were twice denied – first on February 3, 2009, and then on May 1, 2009 – Graydon requested a hearing. *Id.* at 85-86. On August 4, 2010, an Administrative Law Judge conducted a hearing in Pine Bluff, Arkansas, at which Graydon and a vocational expert testified. *Id.* at 30-31. On October 14, 2010, the ALJ issued a written decision denying Graydon's applications. *Id.* at 17-25. On January 11, 2012, the Appeals Council denied Graydon's request for a review of the ALJ's decision. *Id.* at 1-6.[2] Therefore, the ALJ's written decision is the Commissioner of Social Security's final decision in this action. *See id.* at 1.

---

[1] Other parts of the record indicate that Graydon applied on December 3, 2008, instead of December 22, 2008. *See* Tr. at 58-61.

[2] The Appeals Council initially denied Graydon's request for a review of the ALJ's decision on November 8, 2011, but set aside that action to consider additional information. Tr. at 1-12.

The Court reviews the record to determine whether the Commissioner's decision is supported by substantial evidence in the record as a whole and is free of legal error. *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009); *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997); *see also* 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (citation omitted); *Reynolds v. Chater*, 82 F.3d 254, 257 (8th Cir. 1996) (citation omitted). In its review, the Court must consider evidence that detracts from the Commissioner's decision as well as evidence that supports it; the Court may not, however, reverse the Commissioner's decision merely because substantial evidence would have supported a different decision. *Sultan v. Barnhart*, 368 F.3d 857, 863 (8th Cir. 2004); *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993).

"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). A "'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3).

In his decision, the ALJ considered Graydon's impairments by way of the required five-step sequential evaluation process. Tr. at 17-25. The first step is to determine whether the claimant is involved in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is engaged in substantial gainful activity, he will not be considered disabled, regardless of medical condition, age, education, or work experience. *Id.* § 404.1520(b). The second step is to determine whether the

2

claimant has an impairment or combination of impairments that is "severe" and meets the duration requirement. *Id*. § 404.1520(a)(4)(ii). If not, the claimant will not be considered disabled. *Id*. A "severe" impairment significantly limits a claimant's ability to perform basic work activities. *Id*. § 404.1520(c). The third step is to determine whether any impairments meet or equal a listed impairment. *Id*. § 404.1520(a)(4)(iii). If so, and if the duration requirement is met, the claimant will be considered disabled. *Id*. If the claimant does not meet or equal a listed impairment, then a residual functional capacity assessment is made. *Id.* § 404.1520(a)(4). This assessment determines, based on all relevant evidence in the record, what a claimant can still do in a work setting despite the claimant's limitations. *Id.* § 404.1545(a)(1). The assessment takes into account all impairments, severe or not. *Id.* § 404.1545(a)(2). The fourth step is to determine whether the claimant has sufficient residual functional capacity to perform his past relevant work. *Id*. § 404.1520(a)(4)(iv). If so, the claimant will not be considered disabled. *Id*. The fifth step is to determine whether the claimant is able to make an adjustment to other work, given the claimant's age, education, work experience, and residual functional capacity. *Id*. § 404.1520(a)(4)(v). If so, the claimant will not be considered disabled; if not, the claimant will be considered disabled. *Id*.

At step one, the ALJ found that Graydon was not engaged in substantial gainful activity. Tr. at 19. At step two, the ALJ found that Graydon had the following severe impairments: hypertension, insulin dependent diabetes mellitus, and status/post right hand fractures and surgeries. *Id.* at 19. At step three, the ALJ found that Graydon did not have an impairment or combination of impairments that meets or equals a listed impairment. *Id.* at 21. At step four, the ALJ found that Graydon had sufficient residual functional capacity to perform his past relevant work as a limousine driver. *Id.*

at 24.  Therefore, the ALJ found that Graydon was not disabled at step four, obviating the need to

make a determination at step five.  *Id.*

Graydon makes several arguments on appeal.  Graydon first argues that the ALJ should have

found Graydon's mood disorders and obesity to be severe impairments.  A severe impairment is an

impairment or combination of impairments that significantly limits a claimant's physical or mental

ability to do basic work activities.  *See* 20 C.F.R. § 404.1520(c).  "An impairment is not severe if

it amounts only to a slight abnormality that would not significantly limit the claimant's physical or

mental ability to do basic work activities."  *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007).  The

burden is on the claimant to establish that his impairment or combinations of impairments are severe.

*Id.* (citing *Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000)).

To determine whether a mental impairment is severe, an ALJ must rate the degree of the

claimant's functional limitation in four broad functional areas: activities of daily living; social

functioning; concentration, persistence, or pace; and episodes of decompensation.  *Buchner v.*

*Astrue*, 646 F.3d 549, 556-57 (8th Cir. 2011); 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).  The

regulations provide,

> If we rate the degree of your limitation in the first three functional areas as "none"
> or "mild" and "none" in the fourth area, we will generally conclude that your
> impairment(s) is not severe, unless the evidence otherwise indicates that there is
> more than a minimal limitation in your ability to do basic work activities.

20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1).

Here, substantial evidence supports the ALJ's decision that Graydon's mental impairments

do not constitute severe impairments.  The ALJ correctly analyzed Graydon's mental impairments

under the four broad functional areas, finding no limitation in the first two areas, mild limitation in

the third area, and no limitation in the fourth area.  Tr. at 20.  Graydon's statements and explanations

of how his impairments limit his activities support these findings.  Graydon explained that he lived

by himself for part of the time he is claiming disability and made his own meals and performed

household chores, and any difficulty in performing these tasks resulted from physical, not mental,

impairments, *see id.* at 44, 169-76; he functions socially by living with his sister, attending church,

visiting his relatives, and fishing with family members, *see id.* at 37, 44, 50; he has mild

concentration, persistence, or pace problems because he has days where he has an "attitude

sometimes with a person" where he does not "feel like doing anything but sitting around the house,"

*see id.* at 50; and no evidence exists that Graydon experienced episodes of decompensation for an

extended time period.  Additionally, the medical evidence reveals that a mental status examination

did not show functionality problems and that he has not displayed abnormalities in thought and

perception in supportive therapy sessions.  *Id.* at 356-70.

Graydon does not argue with these specific findings, but he contends that his global

assessment of functioning score of 44 reveals that his mood disorders are severe.  Although GAF

scores may be used to assist the ALJ in determining a claimant's functioning level, "the

Commissioner has declined to endorse the GAF scale for 'use in the Social Security and SSI

disability programs.'"  *Halverson v. Astrue*, 600 F.3d 922, 930-31 (8th Cir. 2010) (citing 65 Fed.

Reg. 50,746, 50,764-65 (Aug. 21, 2000)).  A GAF score of 44 therefore is not a dispositive factor

in determining a severe impairment.  Because the ALJ correctly analyzed Graydon's mental

impairments under the four broad functional areas and because substantial evidence supports the

ALJ's findings, the ALJ's decision is upheld.[3]

---

[3] Graydon also argues that the ALJ did not take into account Graydon's GAF score and
Graydon's use of two anti-depressant medications when determining Graydon's mental
limitations and ability to perform past relevant work.  *See* Document #17.  This is a corollary of

As for Graydon's obesity, not even Graydon argues that it significantly limits his ability to do basic work activities, explaining that "it is unclear what limitations result from [the obesity]." Document #17, at 4.  In fact, Graydon never mentioned his obesity at the hearing in front of the ALJ.[4]  Because Graydon does not argue and the medical records do not show that his obesity significantly limits his ability to do basic work activities, the ALJ's decision is upheld.  *See McNamara v. Astrue*, 590 F.3d 607, 611 (8th Cir. 2010) ("Nothing in McNamara's medical records indicates that a physician ever placed physical limitations on McNamara's ability to perform work-related functions because of her obesity.").[5]

Graydon next argues that the ALJ erred at step three in finding that Graydon's impairments did not meet or equal a listed impairment because the ALJ did not correctly address all of Graydon's

---

the above argument because, as noted, the ALJ analyzed Graydon's mental limitations correctly, using the broad functional categories.  *See* 20 C.F.R. §§ 404.1520a(b)-(c), 416.920a (b)-(c). Moreover, the ALJ noted that Graydon had been prescribed two medications for his diagnosed mood disorder and discussed Graydon's therapy sessions.  Tr. at 20.  Contrary to Graydon's assertion that the ALJ did not make a determination as to Graydon's mental limitations, the ALJ found that "the claimant's medically determinable mental impairment of depression does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities."  *Id.*

[4] Graydon did state his height and weight to the ALJ.  *See* Tr. at 36 (stating that he is 5'11" tall and weighs 261 pounds).

[5] Graydon instead argues that the ALJ's decision not to designate Graydon's obesity as a severe impairment means that the ALJ did not properly evaluate Graydon's impairments at the later steps of the five-step evaluation process.  At the later steps of the process, however, the ALJ considers both severe and non-severe impairments in making determinations, such as in determining a claimant's residual functional capacity.  *See Oldman v. Astrue*, 509 F.3d 1254, 1257 (10th Cir. 2007); *Sumners v. Astrue*, No. 09-5065-CV-S-RED-SSA, 2010 WL 2955367, at *2 (W.D. Mo. July 23, 2010).  Here, the ALJ considered Graydon's obesity at later steps in the evaluation process.  *See* Tr. at 23 ("[I]n assessing the claimant's residual functional capacity, the undersigned considered any additional and cumulative effects of obesity upon the claimant's ability to perform routine movement and necessary physical activity within the work environment . . . .").

severe impairments at step two.  Graydon makes no other argument for why the ALJ might have erred at step three.  Because the Court found that the ALJ correctly addressed Graydon's severe impairments at step two, Graydon's argument is invalid.[6]

Graydon next argues that the ALJ wrongly determined at step four that Graydon could perform his past relevant work as a limousine driver.  Graydon explains that he lost his driver's license due to non-payment of child support and therefore could no longer work as a limousine driver.  *See* Document #17, at 5.  To determine whether a claimant can perform past relevant work, the Commissioner compares his assessment of the claimant's residual functional capacity with the physical and mental demands of the past relevant work.  20 C.F.R. §§ 404.1560(b), 416.960(b).  A claimant's residual functional capacity is the most the claimant can do despite physical and mental limitations from the claimant's impairments and related symptoms.  *Id.* §§ 404.1545(a)(1), 416.945(a)(1).  Here, Graydon's loss of his driver's license due to non-payment of child support is not related to Graydon's physical and mental limitations that result from his impairments and related symptoms.  Graydon makes no attempt to connect the loss of his license to his impairments.  Therefore, Graydon's loss of his license is irrelevant to his residual functional capacity, to the ALJ's comparison of Graydon's residual functional capacity with the physical and mental demands of his

---

[6] As discussed, neither the regulations nor case law state that an ALJ must consider at step three only those impairments that the ALJ found to be severe at step two.  Instead, some courts have explained that once an ALJ finds that a claimant has at least one severe impairment, thereby completing step two's requirement, the distinction between severe and non-severe impairments carries no legal significance.  *See Oldman*, 509 F.3d at 1256-57; *Sumners*, 2010 WL 2955367, at *2.  Therefore, even if the ALJ did not consider Graydon's mental impairments and obesity to be severe at step two, the ALJ may have taken those impairments into consideration at step three.

past relevant work, and to the ALJ's ultimate determination that Graydon can perform past relevant work as a limousine driver.

Graydon also questions whether his past work as a limousine driver can be classified as substantial gainful activity. The regulations define "past relevant work" as "work that [the claimant] has done within the past 15 years, *that was substantial gainful activity*, and that lasted long enough for you to learn to do it." *Id.* §§ 404.1560(b)(1), 416.960(b)(1) (emphasis added). A person who earns above a specific monthly amount is presumed to be engaging in substantial gainful activity. *See id.* §§ 404.1574(b)-(c), 416.974(b)-(c).[7] In the year 2003, that monthly amount was $800; in the year 2004, that monthly amount was $810. *See id.* §§ 404.1574(b)(2), 416.974(b)-(c); *Substantial Gainful Activity*, Social Security Admin. (Oct. 16, 2012), http://www.ssa.gov/OACT/COLA/sga.html. Here, Graydon worked as a limousine driver from November 15, 2003, to June 11, 2004. Tr. at 177.[8] He held no other jobs in the years 2003-2004. *Id.* For his work as a limousine driver, he earned $3655.15 in the year 2003 and $5515.80 in the year 2004. *Id.* at 152. For seven months of work, then, he averaged $1310.14 a month, well over the amount required to constitute substantial gainful activity in either 2003 or 2004.[9] Therefore, the ALJ

_____

[7] A claimant can rebut this presumption, *see, e.g.*, *Anderson v. Heckler*, 726 F.2d 455, 456 (8th Cir. 1984), but Graydon makes no argument and presents no evidence to rebut this presumption.

[8] Some discrepancy exists as to the date Graydon ended his work as a limousine driver. On one form Graydon states that he stopped working on May 29, 2004. Tr. at 160. This discrepancy makes no difference to the ultimate determination.

[9] The conclusion is the same if his earnings in the year 2003 are counted towards two months of work, where he would average earnings of $1827.58 a month, and his earnings in 2004 are counted towards six months of work, where he would average earnings of $919.30 a month.

correctly classified Graydon's past work as a limousine driver as work that was substantial gainful activity.

Graydon next argues that the ALJ's opinion did not adequately explain why the medical evidence was inconsistent with Graydon's allegations of pain.   Before discounting a claimant's complaints of pain and limitation, an ALJ must consider all the evidence, including the claimant's work record and daily activity; the intensity, duration, and frequency of the claimant's pain and the conditions causing and aggravating the pain; the effectiveness of medication; and any functional limitations.  *Boettcher v. Astrue*, 652 F.3d 860, 864 (8th Cir. 2011); *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984).   An ALJ may discount a claimant's subjective complaints if there are inconsistencies in the record as a whole.  *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008); *Burns v. Sullivan*, 888 F.2d 1218, 1220 (8th Cir. 1989).   Here, the ALJ considered the evidence, which Graydon does not dispute, and discussed multiple inconsistencies between Graydon's allegations and other evidence in the record, including medical evidence.  The ALJ discussed and adopted the state agency medical consultants' residual functional capacity assessment that Graydon's impairments would allow him to perform work of light exertion, lifting and carrying twenty pounds occasionally and ten pounds frequently, while standing and walking six hours of an eight-hour work day.  Tr. at 23.[10]  The ALJ explained that Graydon's allegations of ankle and knee pain severe enough to limit him to walking only one block were not supported by the above medical evidence.  *See, e.g.*, *id.* at 319 (concluding in a residual functional capacity assessment that Graydon could walk for six hours in an eight-hour work day).  The ALJ also explained that the evidence showed that when Graydon

---

[10] The ALJ noted that Graydon's physicians "offer[ed] no assessments of his functioning, other than Dr. Moore's 2003 conclusion that the fracture to the right wrist joint would cause a permanent limitation that would nto allow significant gripping and lifting . . . ."  Tr. at 23.

follows his prescribed medication regimen, his diabetes and hypertension are under control.  *Id.* at 23.  The ALJ further noted that Graydon's alleged numbness in his hands and Graydon's reports of frequent urination and blurry vision were not reflected in the medical reports.  *Id.*  Finally, the ALJ explained that Graydon's complaint of a recurrence of right hand pain was less credible because despite these allegations of pain, Graydon nevertheless punched a wall with sufficient force to break his right hand.  *Id.*  These examples demonstrate that the ALJ did consider the evidence and gave good reasons why the evidence as a whole was inconsistent with some of Graydon's subjective complaints of pain.

Graydon next argues that the ALJ did not make a function-by-function assessment in determining that Graydon had the ability to perform light work.  The ALJ's residual functional capacity determination should "identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis" – including functions such as sitting, standing, walking, lifting, carrying, pushing, or pulling – before the ALJ expresses a residual functional capacity in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy.  *Depover v. Barnhart*, 349 F.3d 563, 567 (8th Cir. 2003); *see* 20 C.F.R. §§ 404.1545(b), 416.945(b); SSR 96-8p, 1996 WL 374184 (July 2, 1996).  The ALJ cannot describe the residual functional capacity in such general terms that a court is unable to glean the specifics of the claimant's physical limitations from the ALJ's opinion.  *See Pfitzner v. Apfel*, 169 F.3d 566, 568 (8th Cir. 1999).  The ALJ need not, however, necessarily make findings as to every enumerated function.  *See Depover*, 349 F.3d at 567 (upholding the ALJ's residual functional capacity determination where the ALJ did not make specific findings as to the claimant's limitations on sitting, standing, and walking).  This case is closer to the facts of *Depover* than to the facts of

*Pfitzner.* The ALJ listed Graydon's specific physical limitations. The ALJ, for instance, adopted the state agency medical consultants' residual functional capacity assessment, stating in his opinion that Graydon could carry and lift twenty pounds occasionally and ten pounds frequently, while standing and walking six hours in an eight-hour work day. Tr. at 23. The ALJ also described the physical limitations Graydon has due to his wrist injury, his ankle and knee pain, and his diabetes and hypertension. *Id.* The ALJ did not mention Graydon's functional limitations of sitting because no indication exists that Graydon has limitations in that area. The Court can glean Graydon's specific physical limitations from the ALJ's opinion, and the ALJ therefore did not err in his function-by-function assessment of Graydon's functional limitations.

Finally, Graydon argues that insufficient medical evidence exists to support the ALJ's findings. An ALJ's assessment of a claimant's residual functional capacity must be supported by some medical evidence, even though the assessment "is ultimately an administrative determination reserved to the Commissioner." *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007). Graydon cites *Nevland v. Apfel*, 204 F.3d 853 (8th Cir. 2000), in support of his argument. Graydon fails to acknowledge, however, that *Nevland* was a case decided at step five, and as the court in that case stated, "In our circuit it is well settled law that once a claimant demonstrates that he or she is unable to do past relevant work, the burden of proof shifts to the Commissioner . . . ." *Id.* at 857; *see Casey v. Astrue*, 503 F.3d 687, 697 (8th Cir. 2007) ("*Nevland* does not preclude the ALJ's reliance on a reviewing physician's report at step four when the burden is on the claimant to establish an inability to do past relevant work."); *Eichelberger v. Barnhart*, 390 F.3d 584, 591-92 (8th Cir. 2004) ("[T]he burden of persuasion to prove disability and to demonstrate RFC [at step four] remains on the claimant.").

11

In this case, sufficient medical evidence exists to support the ALJ's decision. In his opinion, the ALJ discussed Graydon's treatment by physicians at Jefferson Comprehensive Care System, Inc. for his wrist, knee, back, and ankle pain, as well as for his obesity. Tr. at 21, 23. The ALJ also discussed Graydon's mental health care treatment that he received at the Southeast Arkansas Behavioral Health System. *Id.* at 20. The ALJ also discussed and adopted the findings of the state agency medical consultants. *Id.* at 23. The ALJ noted that the main assessment of Graydon's physical functional limitations by Graydon's treating physicians came from Dr. Michael M. Moore's conclusion that the fracture to the right wrist joint would not allow significant gripping and lifting. *Id.* The Court does not need to decide whether the ALJ would have needed to procure more medical evidence from treating physicians if the burden of proof were on the Commissioner, because this case was correctly decided at step four, where Graydon had the burden of proof and where the ALJ was within his rights to adopt and rely on non-treating physicians' medical opinions. *See Casey*, 503 F.3d at 697. For these reasons, sufficient medical evidence exists to support the ALJ's findings.

THEREFORE, the Court hereby affirms the final determination of the Commissioner and dismisses Graydon's complaint with prejudice.

IT IS SO ORDERED this 6th day of December, 2012.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE